Ms. O'Keefe, would you announce our third case for argument? Case 22-3362, United States v. Travansky-Swington. Case 22-3362, United States v. Travansky-Swington. May it please the Court. Mr. Sington was convicted of one count of felon in possession of a firearm after a jury trial and sentenced to 10 years, the stat max at the time. It raises several challenges on appeal. Today I plan to focus on the shoe print testimony as well as its challenges to the PSR and its reference to gang affiliation. In this case, the firearm was retrieved outside in the snow. The prosecution presented testimony from two separate witnesses, Officer Caleb Christensen and Sergeant Kerry Devine, stating that Mr. Swington's shoes matched the footprints that were found in the snow that led to the residence behind where the firearm was eventually retrieved. This testimony was inadmissible because it was neither proper expert testimony or lay opinion testimony. Generally, this type of shoe print analysis falls under expert testimony. The prosecution on appeal doesn't appear to argue that Officer Caleb Christensen was an expert, but Sergeant Kerry Devine was not either. She stated, I'm not an expert on shoe print analysis in her testimony. There's vague references to her training, but the knowledge and the foundation for that is not well established. Isn't this pretty easy lay opinion testimony in the sense that you've got this kind of distinctive Puma logo and zigzag pattern that probably didn't take an expert to notice that? That's not the only question we need to answer is if it's proper lay opinion testimony. For it to be proper lay opinion testimony just based off I'm seeing this and this is what I observed, it needs to be something that the individual personally perceived and it needs to be helpful to the jury. Especially with Sergeant Kerry Devine, that's problematic because she wasn't on the scene. She just had Mr. Swington's shoes and she also had the pictures that were taken of the shoe prints at the scene. The jury had that. Observations themselves. In other cases from other circuits where this court has found shoe print testimony proper as lay opinion testimony, like the Shields case, from what I can tell from the way the opinion is written, it's a circumstance where the officer is out on the scene making these personal observations and is telling the jury, this is what I see. This is why I thought it was similar to the defendant's shoes. So why isn't it harmless? If you say the jury had the photographs, had all the information, and then you have testimony from a witness saying, look, I'm not an expert. And the jury takes a look at it and they reach the conclusion that, hey, this is probably a match or arguably makes that conclusion. Why isn't this harmless error in light of the other evidence? There's several reasons. First being, this is the question for the jury and it's something that the jury should have been able to determine for themselves. And you have two separate witnesses telling them, no, these were the shoes that led to where the firearm was. Even more problematic is Sergeant Devine's testimony. Because if it is admitted, considered admissible under at least part lay opinion testimony, she did testify as to an expert, at least to some things. And so you have that dual role testimony where some of it she's saying she's an expert, some of it she's saying she's not. But there was no clarification for the jury as to what parts of her testimony would have been expert and what part would have been lay opinion testimony. The failure to clarify that then bolsters the lay opinion testimony and giving it the  I wanted to ask you about Christiansen because I wonder if that enters into harmless error analysis as well. It seems to me that that was clearly admissible because it's how they found your client. And in other words, she was on the scene, she saw what was going on, and she followed this unique Puma logo. And so if the jury had the pictures, the photos, and how I found the defendant using the shoe prints, then it seems to me that it's a tough road to hoe, tough hill if Devine, even if The problem with that is there was no limiting instruction telling the jury that they could only consider that for that purpose to court to say the jury didn't say this is the what you see sometimes in these circumstances, whereas evidence that's controversial or disputed is admitted for that limited purpose of showing the steps the officers took in the investigation. The jurors won't told that they could only consider it for that reason. The defense counsel asked for a instruction like that. I don't believe so, Your Honor. And I don't think the government on appeal is arguing that as a basis for admission. The district court did rule on that and say that it would be a basis for admission. But that kind of came after the fact. I don't think it was raised until the district court made that ruling and the testimony already came in. So it just might not have been on the radar as a permissible basis. From my recollection of the motions in Lemonade, it was always about is this expert, is this proper lay testimony. So it would not be harmless because it wasn't it wasn't admitted and the jury wasn't told that could only consider it for that reason. And as far as the other evidence leading to harmless error, this witnesses were contradictory and there was credibility issues with them. There was differing testimony on how many shots were fired. There was questions of Mr. Teague and he had prior dealings with firearms. He had prior dealings with 38 specials or revolvers, which is the firearm in this case. And eventually was in a relationship with another one of the witnesses who was in a pseudo relationship with Mr. Swington at the time. So due to credibility issues with the other evidence at trial, considering this was strong evidence to have two different people testifying, maybe as experts, maybe not, saying these two prints were his and they led right to the firearm. It was compelling evidence, but because it wasn't proper, it did impact the jury's verdict. I'd like to next discuss the issue of gang affiliation mentioned in the PSR. The district court should have either struck this mention of gang affiliation in the PSR or indicated in the statement of reasons or some other document appended to the PSR that this allegation was not established. The failure to do so violated Federal Rule of Criminal Procedure 32 I-3. Under this rule, a defendant objects to a factual allegation and here the defendant objected in the written PSR objections that maintain the objection at sentencing. And in those circumstances, if a judge, judge doesn't have to rule on it, right? But it needs to be clear from the record that the judge did not consider it or it was not relied upon in the documents themselves. The court didn't do that here. And I can't, the impact that something like this that has on my clients, this being in the PSR and it not being clarified that it was not proven has a significant impact on my clients just life when they're incarcerated. The gang affiliation mentioned bumps them up to a high security. Here, we have an objection to it. It's not proven. It's not struck from the PSR. And if you look at the statement of reasons, the district court indicated that it adopted the PSR without change. The BOP looks at that when they're making the security classification. It doesn't establish to them if this was not proven and it cannot be relied upon. And that's what the district court is obligated to do when there's an objection under these circumstances. Did he request that it be struck? He didn't like specifically ask strike this from it. I don't know that it's required to say, I object to this. It's not proven. Also follow through and strike it. I mean, I think it's just if you're objecting to it, that puts the district court on notice of what is obligated under federal rule of criminal procedure 32, which that rule tells district court judges if you're not relying on something, if it's not proven, you have to make it clear in some manner. So I think maybe they don't have to strike it from the PSR, but at minimum, you have to include something either in your statement of reasons or attaching it to the PSR, indicating that you didn't rely upon it and it wasn't established. Is there any decent argument that the district court did rely on him? Not that I can think of, your honor. I just wanted to ask about Conrad. So that's the case where this happened recently, and we did a limited remand to send it back down so that they could deal with the objection. And I thought that was a little narrow in the sense that, as you say, you could also make a statement that the district court didn't rely on it. Say it didn't make any difference. I mean, would that be also a permissible thing? Do you view on remand if he says, I didn't rely on this, or do they, does the district court actually need to make a finding that says this actually didn't happen? I don't think so. And Conrad was my case, your honor. I think that's all they did was they remanded it back and said this gang allegation was not proven and it didn't rely upon it. I'm not sure exactly how it shook out, but based off my conversations with the trial attorney, I think that's essentially all they did. This wasn't proven, wasn't relied upon. And from my experience, I think that's enough for the Bureau of Prisons and whether they can rely upon it as far as security classification and all of that. So there aren't any other immediate questions. I would reserve the remainder of my time for rebuttal. May it please the court. Good morning, your honors. I'm Ashley Corcoran with the Northern District of Iowa representing the government. I wanted to first touch base or touch on Ms. Quick's arguments about the footprints in this case. The government is arguing that Sergeant Devine's testimony was appropriate under 702 because she was qualified as an expert. As Ms. Quick indicated, when Sergeant Devine took the stand, when it got to the portion of the testimony about the tread analysis and the shoe print familiarity, she did say I'm not an expert. And while she may not consider herself an expert in the field, that's not the standard here. Experts are not required to be outstanding practitioners in their field. They are certainly not required to be certified with respect to what they're testifying to. There are a number of different factors that this court can look to on whether or not somebody is considered an expert. In Sergeant Devine's experience, she was a police officer of 27 years with Waterloo Police Department. Ten of those years were spent in the crime lab where she was a supervisor. Her sole job in this investigation and in all of the investigations she does is to essentially process the evidence that comes in. And that includes looking at photographs of shoe prints and the actual shoes themselves and determining whether or not those have enough similarities, enough markings to go She had been doing this for 10 years and that was her role here, including looking at a bunch of other evidence in this case, the firearm, whether or not there was DNA, whether or not there was fingerprints. So as to the shoe in particular, what specifically was the expert testimony that she offered? So there was two lines of questioning, and I will note, and I can get into this here in a moment, I will note that her questioning about the treadwear and the shoe prints was incredibly limited. And there was really just two lines of questioning that she was asked of. One was whether or not the tread was similar to the Puma shoes that she reviewed. And her testimony was that it was, and she likened that to how she would lift fingerprints. Essentially, if she's going to look at fingerprints, how she would compare whether or not fingerprints matched. I would argue that that is specialized training. It requires a methodology that is pretty common to most investigations. Outside of that, the second line of questioning was to that Puma logo, specifically what was found in the arch there. When you look at her testimony, there's really only three photographs that she testified to. And at this point, Sergeant Christensen or Officer Christensen had already testified regarding those photographs. The jury had already seen them. They had already seen the Puma shoes. So by the time Sergeant Devine takes the stand, she looks at those three photographs. The first photograph that Officer Christensen identified, she says, I couldn't make any sort of similarities there. I wasn't able to make any markings. And so based on that photograph alone, I'm not sending on to the State Crime Lab. That second photo, I think it's Government's Exhibit 14. That was essentially the key piece of evidence that she looked at when she looked at those Puma shoes. She was able to then identify that tread on the outside of the shoe. And she was also able to point out in that second line of questioning, the Puma logo. She didn't liken that to any sort of specialized training or methodology. Essentially what she said is, in my experience looking at that shoe, that's just a Puma logo. Then there was the third photograph that she looked at, Government's Exhibit, I believe, 15, where she testified again that the Puma shoes and the footprints in the photograph are similar. But ultimately, she never sent those photographs and those shoes on to the State Crime Lab because Sergeant Devine testified that she wasn't able to identify enough markings or So her ultimate testimony is while similar and while they look the same, there was enough markings to send it on. And that was her job in this investigation. Why have her testify then? If it was sort of inconclusive and there was some uncertainty whether she's a lay witness or an expert witness, why not just rely on Christensen, which I, as you heard me say to opposing counsel, I think was clearly admissible. Sergeant Devine's role in this investigation was to process all of the evidence. So she took everything and that was taken from the scene. As I mentioned earlier, that was the gun. She tried to look for fingerprints. She tried to look for DNA. And she was, I believe, looked at the shell casings or she rather lack thereof because this was a revolver. And so in order to essentially put her up there and to testify with respect to her entire role in this investigation, she went through essentially step by step all of the evidence that she had looked at. So that takes me to Sergeant, or excuse me, Officer Christensen. And I agree with you, Judge Strauss, on this is that this is squarely within the limitations of shields here. Officer Christensen was out at the scene. All of the, while in trial he may have testified to the actual photographs, when he was out at the scene and he was looking at these photographs or looking at these footprints, this was based squarely on his own perceptions out at the scene. And this also went to the course of his investigation. He went back to the police station. He retrieved the shoes that were taken from Mr. Swington at the time of his arrest. He turned them over. He looked at the shoes. He observed the squiggly line. He observed the unique tread pattern. And he also observed the Puma logo. As Officer Christensen testified to, he was familiar with Puma shoes because he owned about half a dozen himself. Goes back out to the scene. He is able to find shoe prints that matched what he saw back at the station. And he followed those. What's also important to note is he follows those to a driveway. He doesn't follow those to the gun itself. He follows it to a driveway. At that point, that's when the K-9 comes in. They put the K-9 on the driveway and the K-9 takes them to the gun. And so it's our belief that he squarely fits within the realm of a lay witness testimony. With respect to harmless error, even if this court would decide that Sergeant Devine's testimony was inadmissible and shouldn't have been admitted, there was substantial evidence supporting the conviction in this case. And I want to get to that evidence here in just a moment. But I want to note that because Sergeant Devine's testimony was so limited and because Sergeant Devine essentially didn't say these 10 shoes matched 100% of the time, that is my testimony. I'm sending it on to the crime lab. And also because Sergeant Devine was after Officer Christensen, there really is no room here for Sergeant Devine to essentially bolster the credibility of Officer Christensen or to substantially influence the jury's verdict. There really was, with respect to weight of the evidence, that could really go one way or the other. She didn't stand up there and say definitively, these are the defendant's footprints. She wasn't able to do that. So with respect to harmless error, then the substantial evidence, you have four witnesses who identified the defendant as the individual who possessed the firearm in question. They identified the firearm during trial. Three of them also identified the firearm as something they had seen the defendant with previously. There was also testimony that they called 911 as soon as those shots were being fired. And you can hear the defendant's voice in the background of that 911 call. And when that first responding officer responded to the scene, he testified, he responded within minutes to the scene. And so your timeframe there as to when the defendant essentially evades law enforcement is very, very minor or very little because it's only a matter of minutes before the first officer responds. Defendant is not there. And instead, he has these four witnesses that he speaks to. The officer testified, none of these witnesses were covered in snow. None of them appeared very cold. It was pretty consistent testimony throughout the course of the trial that it was an incredibly cold night. It was about negative 20 degrees. And none of the witnesses left the scene or left the house during the course of the investigation for an extended period of time. Meanwhile, a short time later, the defendant is found by another officer who recognized him. He is covered in snow. He's very cold. And it was through that path from the time he leaves the house to where he's actually ultimately found by police and taken into custody. That is where they find those footprints. That is essentially how they find that gun. And so the evidence in this case was overwhelming. There really is nothing to indicate that Sergeant Devine's testimony is going to substantially influence the verdict in this case or prejudice the defendant. With respect to the gang reference in the PSIR, I would first note, I believe there was a question on whether or not counsel asked, defense counsel asked for that to actually be struck at the time of the sentencing. And they did not. I wonder if that matters, though. I think Rule 32 requires that either the court say it's not something I'm relying on or to decide the question. I think it matters in this case because of the remedy. There are a number of different things that your court could do here. Essentially, they could strike it from the PSIR or they could just amend the statement of reasons or they could give another. Rule 32 doesn't essentially require what the court has to do and what form they have to base their decision on. And so in this case, I would argue that not asking initially for it to be struck is relevant here because now they are asking for it to be struck. And so I think that this court has to review whether or not the district court erred when it didn't strike it for plain error. And we would argue that the district court did not err when it wasn't struck. Now, whether or not they're... One problem with... Before you move on, one problem with that, though, is I think Conrad didn't involve a renewed objection either. And you could make an argument that it's plain error review or that it somehow waived, but Conrad treated it as de novo review, which kind of feeds what I think Judge Grunder is saying. I think there's two different... I think with respect to whether or not the court erred in not striking it is entirely different than whether or not the court erred in not considering it at all or considering it at all and then not noting that in its statement of reasons. And so I would note that if the argument here is they were in compliance with Rule 32, then the court... This court could remand for the very limited purpose of amending as they did in Conrad those statement of reasons to say, we didn't include this when we sentenced the defendant. And there certainly is no evidence that it was included. The court was very... The district court was very explicit in its reasons for not bearing downward for essentially sentencing the defendant the way it did. And so with respect to that Rule 32 violation, if you will, if that's what we want to call it, is that it would be remanded then for that very limited purpose. But I don't think it requires that it be struck. So if there are no further questions from the panel, I will yield the rest of my time. Hearing none, thank you. I'll start with Officer Caleb Christensen's testimony and whether this is valid lay opinion testimony and while he's testifying as to what he did as part of the investigation. The problem with that is how Officer Christensen testified in this case. He didn't just say, beyond the failure to include a limiting instruction. He didn't just say, well, I thought they matched, so I followed it. When they stopped, I got the K-9. What they had him testify to is they brought up the pictures, just like they did with the expert they alleged... The witness they alleged as an expert and had Officer Caleb Christensen testify picture by picture. Well, here's why I think this matches here. Here's why I think this is similar here. That's not lay opinion testimony where they're testifying about what they perceived at the time and how they perceived it. That's more akin to an expert coming in and testifying to the jury. Here's how they're similar and here's how they look and here's why I think it matches in the circumstances. So it's a different situation than him just simply saying, I saw these footprints, they look similar, so I followed them. And finally, I would just end with if the government is in agreeance that all they have to do is amend this Statement of Reasons, that's all we essentially need. Because from my experience, striking or it being in the Statement of Reasons is enough to establish to the Bureau of Prisons that it wasn't proven and it shouldn't be relied upon as far as the security classification. And I just urge needing to ask for it. The reason for this rule, at least I think, is it needs to be clear from the record because not everyone appeals. And the Bureau of Prisons isn't going to be looking through every sentencing transcript and saying, OK, what was proven, what was not? And it's crucial that it be very clearly denoted either through striking through the PSR or in the Statement of Reasons, something as critical as gang affiliation wasn't proven and wasn't relied upon in sentencing. So if there are no further questions, we would ask that the Court reverse for the reasons stated in the briefing and today. Very well. Thank you, Counsel. I appreciate your arguments. The case is submitted and we'll decide it in due course.